**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WISCONSIN**

---

**DUSTON SUTHERLAND**
(on behalf of himself and others similarly situated),

        Plaintiff,

                                  Case No.: 26-CV-675

    v.

**UNION PACIFIC RAILROAD COMPANY,**

        Defendant.

---

**CLASS ACTION COMPLAINT**

---

Plaintiff Duston Sutherland, individually and on behalf of all other similarly situated, brings this action against Defendant Union Pacific Railroad Company under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, and alleges the following based on personal knowledge, the investigation of counsel, and information and belief.

## I.    NATURE OF THE ACTION

1. This case is about an enormous, nationwide corporation denying employment to potentially thousands of applicants because of benign medication that they take to manage their disability.

2. Defendant Union Pacific Railroad has a practice of refusing to hire people as train drivers because they take buprenorphine, methadone, or naltrexone, medications used to treat Opioid Use Disorder, without any meaningful

individualized determination of whether they can perform the essential functions of the job despite their disability medication.

3. Union Pacific illegally discriminated against named Plaintiff Duston Sutherland, and similarly situated individuals (Class Members), on the basis of their actual disabilities, record of disabilities, and because they were regarded as disabled; and Union Pacific used qualification standards that screened out and tend to screen out individuals with disabilities in violation of the ADA, 42 U.S.C. § 12112(a), (b)(6). They did all this without the individualized assessment and determination required under the ADA.

4. This class action seeks to enjoin Union Pacific from such unlawful employment practices and recover the lost wages of Plaintiff and Class Members, as well as compensatory and punitive damages.

## II.   JURISDICTION & VENUE

5. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the ADA.

6. This action is authorized and instituted under Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

7. The employment practices alleged to be unlawful were committed within the jurisdiction of this Court and within all states in which Union Pacific operates: Arizona, Arkansas, California, Colorado, Idaho, Illinois, Iowa, Kansas, Louisiana,

Minnesota, Missouri, Montana, Nebraska, Nevada, New Mexico, Oklahoma, Oregon, Tennessee, Texas, Utah, Washington, Wisconsin, and Wyoming.

## III.   PARTIES

8.     Plaintiff Duston Sutherland is a disabled resident of Whitehall, Wisconsin, who was denied employment at Union Pacific because he takes buprenorphine, a medication prescribed under the brand names Suboxone, Buprenex, Butrans, or Subutex, which manages his disability, Opioid Use Disorder.

9.     At all relevant times, Defendant Union Pacific Railroad Company has continuously been a corporation headquartered in Nebraska and doing business throughout the United States, including within the State of Wisconsin. Defendant has continuously had at least 30,000 employees.

10.     At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Section 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) and (h).

11.     At all relevant times, Defendant Union Pacific has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

#### IV.   ADMINISTRATIVE PROCEDURES

12.     All conditions precedent to the institution of this action have been fulfilled.

13.     On September 19, 2025, Mr. Sutherland, filed a class complaint with the Equal Employment Opportunity Commission ("EEOC") alleging that Union Pacific violated the ADA.

14.     On May 11, 2026, the EEOC issued Mr. Sutherland and Class Members a Dismissal and Notice of Rights regarding his claims under the ADA.

#### V.   LEGAL FRAMEWORK

15.     In 1990 Congress passed the Americans with Disabilities Act "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Congress found that disabilities "in no way diminish a person's right to fully participate in all aspects of society," yet many people with disabilities "have been precluded from doing so because of discrimination." *Id.* § 12101(a)(1).

16.     Through the ADA, Congress prohibited discrimination against individuals with disabilities by covered entities: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* § 12132.

17.     An individual has a disability under the ADA if, in relevant part, they have "a physical or mental impairment that substantially limits one or more major

life activities," including but not limited to caring for oneself and thinking. *Id.* § 12102(1), (2); 29 U.S.C. § 705(9), (20).

18. While the term "individual with a disability" generally does not cover people who currently use illegal drugs, it does include people who are seeking health services or services in connection with drug rehabilitation, regardless of whether they currently use drugs, and people who are in recovery from past drug use. *See* 42 U.S.C. § 12210; 29 U.S.C. § 705(20).

19. The ADA considers drug addiction to be a disability if the addiction substantially limits one or more major life activities and protects individuals with a drug addiction.[1]

20. The ADA protects people with a past history or "record of" a drug addiction.[2]

21. The ADA also protects individuals who are in recovery, but who would be limited in a major life activity in the absence of treatment and/or services to support recovery.[3]

22. Employers may screen employees to ensure they are not using illegal drugs, but employers may not, under the ADA, deny employment because of an

---

[1] 28 C.F.R. § 35.08(b)(2). Regulations implementing Title I of the ADA define the term "physical or mental impairment" as including "any physiological disorder or condition." 29 C.F.R. § 1630.2(h).

[2] 42 U.S.C. § 12102(1)(B); 28 C.F.R. §§ 35.108(a)(1)(ii), 35.108(e), 36.105(a)(1)(ii), 36.105(e).

[3] 28 C.F.R. §§ 35.108(d)(1)(viii), 36.105(d)(1)(viii).

individual's legal use of medication, unless the applicant cannot do the job safely and effectively.[4]

23.     The U.S. Department of Justice endorses an interpretation that the ADA prohibits discrimination on the basis of an individual's medical treatment of a drug addiction, unless the employer can show that the applicant cannot perform the job safely and effectively.[5]

24.     Additionally, Department of Transportation regulations explicitly state that employees may use otherwise banned controlled substances, when they are prescribed by a medical practitioner, used consistently with the prescription, and the medication's use is consistent with the safe performance of the employee's duties. 49 C.F.R. § 219.103.

## VI.   FACTS

### A. Opioid Use Disorder is a disability that has caused a national epidemic of overdose deaths.

25.     Nationwide, the United States is suffering from an epidemic of Opioid Use Disorder ("OUD"), a chronic condition that causes intense and increasing cravings of opioids.

26.     Opioids are a class of drugs that control pain, cause feelings of pleasure, and inhibit the ability to think, concentrate, and make decisions. Opioids include

---

[4] *See, e.g.*, 42 U.S.C. § 12111(3); 29 C.F.R. §§ 1630.2(r), 1630.15(b)(2), 1630.15(e).

[5] The Americans with Disabilities Act and the Opioid Crisis: Combating Discrimination Against People in Treatment or Recovery, U.S. Department of Justice Civil Rights Division (2022), chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://archive.ada.gov/opioid_guidance.pdf.

prescription medications, as well as illicit drugs like heroin and fentanyl. Both prescribed and illicit opioids are highly addictive.

27.    OUD is a chronic, progressive disease of the brain, characterized by symptoms such as "a persistent desire or unsuccessful efforts to cut down or control opioid use"; "craving, or a strong desire or urge to use opioids"; continued opioid use despite negative consequences in one's life; tolerance, meaning the need to take more opioids to achieve the desired effect or a "markedly diminished effect" with use of the same amount; and withdrawal symptoms.[6] OUD often becomes more severe over time, and individuals with OUD are at increased risk of serious physical injury or death, including from overdose.

28.    OUD fundamentally alters the brain in two primary ways. First, the brain releases a huge amount of dopamine when a person takes opioids. The brain of an individual who does not have OUD is not exposed to such high levels of dopamine and, as a result, is able to derive pleasure from important daily activities such as eating, self-care, and social activities. But the ability of individuals with OUD to derive pleasure from these daily activities is chemically limited by repeated exposure to extremely high levels of dopamine. Second, as OUD progresses, an individual's tolerance for opioids increases, often requiring higher and/or stronger doses of opioids to allow an individual to feel "normal" and avoid experiencing painful withdrawal symptoms, let alone experience the "high" they once felt.

---

[6] American Psychiatric Association (2022), *Diagnostic and Statistical Manual of Mental Disorders*, 541 (5th ed., text rev.).

29.     In 2021, it was estimated that 2.5 million adults in the U.S. suffer from OUD.[7]

30.     Opioid overdose is the leading cause of death for Americans aged 18 to 44.[8]

31.     Over 700,000 people have died of an opioid overdose in the United States since the year 2000.[9] The vast majority of those deaths, over 500,000, have occurred in the last nine years.[10]

---

[7] *Only 1 in 5 U.S. Adults with Opioid Use Disorder Received Medications to Treat It in 2021*, NATIONAL INSTITUTE ON DRUG ABUSE (August 7, 2023), https://nida.nih.gov/news-events/news-releases/2023/08/only-1-in-5-us-adults-with-opioid-use-disorder-received-medications-to-treat-it-in-2021.

[8] *Statement from CDC's National Center for Injury Prevention and Control on Provisional 2024 Overdose Death Data*, CENTERS FOR DISEASE CONTROL AND PREVENTION (May 14, 2025), https://www.cdc.gov/media/releases/2025/2025-statement-from-cdcs-national-center-for-injuryprevention-and-control-on-provisional-2024.html [https://perma.cc/3EYF-4MU4].

[9] *Drug Overdose Deaths: Facts and Figures*, NATIONAL INSTITUTE ON DRUG ABUSE (last visited July 21, 2026), https://perma.cc/FSN7-LRQX.

[10] Heather Saunders, Nirmita Panchal, & Robin Rudowitz, *Opioid Overdose Deaths: National Trends and Variation by Demographics and States*, KFF (Feb. 24, 2026), https://www.kff.org/mental-health/opioid-overdose-deaths-national-trends-and-variation-by-demographics-and-states/.

32.    In 2024, over 53,000 people died of an opioid overdose in the United States.[11] This exceeds the number of people who died in motor vehicle crashes[12] or gun violence.[13]

**B. Medication effectively and safely treats Opioid Use Disorder.**

33.    Because OUD symptoms are due to changes in the brain's circuitry and chemistry, recovery from OUD is not a matter of willpower or work ethic.

34.    Instead, recovery requires addressing the change in brain chemistry, as well as providing the social support necessary to make recovery possible.

35.    Indeed, one of the primary symptoms of OUD is the continued use of opioids despite negative consequences, due to intense cravings.

36.    Thus, medication for OUD is often necessary. Medications can restore the brain's chemistry and allow individuals with OUD to live healthy and fulfilling lives.

37.    Due to the changes in brain chemistry, OUD often fails to respond to non-medical treatments, like abstinence-only or twelve-step programs. While these

---

[11] *Provisional Drug Overdose Death Counts*, CENTERS FOR DISEASE CONTROL AND PREVENTION (last visited June 24, 2026), https://www.cdc.gov/nchs/nvss/vsrr/drug-overdose-data.htm [https://perma.cc/Q7DU-K85E].

[12] *Trump's Transportation Department Announces Record-Low Traffic Deaths & Fatality Rates in 2025*, NATIONAL HIGHWAY TRAFFIC SAFETY ADMINISTRATION (Apr. 2026), https://www.nhtsa.gov/press-releases/traffic-deaths-2025-early-estimates-2024-annual.

[13] *What the Data Says About Gun Deaths in the U.S.*, PEW RESEARCH CENTER (Mar. 5, 2025), https://www.pewresearch.org/short-reads/2025/03/05/what-the-data-says-about-gun-deaths-in-the-us/ [https://perma.cc/5Z7Q-FFHV].

approaches may work for some individuals, the scientific and medical consensus is that medications for OUD, like buprenorphine, are medically necessary and dramatically decrease the risk of relapse, overdose, and death among those with OUD.

38.    Medications for OUD, in combination with appropriate psychosocial services, are the standard of care to treat OUD as recognized by the American Society for Addiction Medicine.[14]

39.    Currently, about 550,000 people are estimated to receive medication assisted treatment to manage their OUD.[15]

40.    There are three FDA-approved medications to treat OUD: methadone, naltrexone, and buprenorphine.[16] These medications are not interchangeable and have different mechanisms of action. Due to various biological and psychological factors, the medication that works for one person's treatment may not work for another.

41.    Methadone is a full agonist that activates opioid receptors in the brain and thus prevents painful and dangerous symptoms of withdrawals from opioids.

---

[14] *ASAM National Practice Guideline for the Treatment of Opioid Use Disorder 2020 Focused Update*, AMERICAN SOCIETY OF ADDICTION MEDICINE (2020), https://sitefinitystorage.blob.core.windows.net/sitefinity-production-blobs/docs/defaultsource/guidelines/npg-jam-supplement.pdf?sfvrsn=a00a52c2_2 [https://perma.cc/R5B6-AYKA].

[15] *Only 1 in 5 U.S. Adults with Opioid Use Disorder Received Medications to Treat It in 2021, supra* note 7.

[16] *Information about Medications for Opioid Use Disorder (MOUD)*, U.S. FOOD & DRUG ADMINISTRATION, https://www.fda.gov/drugs/information-drug-class/information-about-medications-opioid-use-disorder-moud.

42.     Naltrexone, in contrast, is an antagonist that blocks the opioid receptors in the brain, preventing individuals from feeling the high of opioids. Individuals taking naltrexone do feel the painful and dangerous withdrawal symptoms.

43.     Buprenorphine is a partial agonist that partially activates and partially blocks the opioid receptors in the brain. Someone first starting to take buprenorphine can have painful withdrawal symptoms, especially if they had been using fentanyl or have severe OUD.

44.     Buprenorphine is prescribed under several brand names, most commonly Buprenex, Butrans, Suboxone, and Subutex.

45.     A therapeutic dose of any of these medications does not cause a person to feel intoxicated but rather allows one to function in the same manner as someone whose brain chemistry has not been altered by OUD.

## C. Named Plaintiff Duston Sutherland

46.     Mr. Sutherland has OUD.

47.     He is one of the survivors and success stories of the deadly opioid epidemic. He has lived without opioids since 2023.

48.     He found life-saving treatment in the form of buprenorphine.

49.     Since September 2023, he has used buprenorphine.

50.     In March 2025, Mr. Sutherland applied to work as a driver ("Train Crew employee") for Union Pacific.

51.     He received a conditional offer of employment, contingent upon a medical screening.

52.     Mr. Sutherland submitted all requested medical documentation timely.

53.     He disclosed that he was prescribed Suboxone and took that regularly to treat his OUD.

54.     His medical documentation showed that he used Suboxone as part of his medication assisted treatment for past opioid addiction.

55.     On March 24, 2025, Union Pacific sent Mr. Sutherland an email stating: "Suboxone is a restricted medication per UP policy for employees in safety sensitive positions. Please submit documentation from your treating provider regarding the ongoing clinical necessity of this medication and whether an alternative medication is available/indicated at this time."

56.     Later that day, Union Pacific wrote Mr. Sutherland, "Since [Suboxone] is a restrcited medcaion [sic] for Union Pacific we need to know from your provider what the treatment plan is going forward."

57.     Mr. Sutherland followed up with a letter from his doctor which stated, in part:

> Duston Sutherland is my patient, who is actively in Medication Assisted Therapy with Suboxone for his opioid use history, he has been stable on this medication and has no complications so far. He has been doing great in the program, his only requirement is a monthly follow up visit with me. … He will have ongoing monitoring and treatment until a point that he feels he is comfortable to come off the medication.

58.     On March 28, 2025, Union Pacific rejected Mr. Sutherland's application.

59.     The company wrote in an email:

> Due to the requirements of the safety sensitive position of Train Crew, we have determined that you are not currently medically qualified to hold this position because of the significant safety risks associated with your ongoing treatment with the UP-

restricted medication, Suboxone, for your opioid use disorder. Please consider re-applying if/when you have been weaned off the medication and your condition has stabilized.

60. In denying Mr. Sutherland employment, Union Pacific relied on a policy that prohibits employees in safety related jobs from using buprenorphine, as well as methadone and naltrexone.

61. Union Pacific never asked Mr. Sutherland or his doctor whether he experienced side effects, whether he was safe to perform the essential job functions of a Train Crew employee, or any other facts concerning his use of the medication and his disability.

62. Union Pacific never conducted an individualized assessment of Mr. Sutherland's use of Suboxone to determine whether it would affect his ability to work as train driver.

63. In fact, Mr. Sutherland has never experienced side effects from taking Suboxone.

64. Union Pacific has similarly rejected all Class Members from employment because of their use of buprenorphine, methadone, or naltrexone to treat their OUD, without individualized assessments.

## VII. CLASS ALLEGATIONS

65. Plaintiff brings this action on behalf of himself and, under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), as a representative of a Class defined as follows:

> All individuals who are on buprenorphine, methadone, or naltrexone to treat Opioid Use Disorder, applied to work at Union Pacific Railroad Company, and were denied employment

pursuant to Union Pacific's policy regarding restricted prescription medications.

66. For purposes of this action, the Class Period is defined as November 23, 2024, through the present.

67. Excluded from the Class are Defendant Union Pacific and any entity in which Defendant has a controlling interest, as well as any of Defendant's legal representatives, officers, directors, assignees, and successors.

68. Members of the Class are so numerous that joinder of all Class Members is impractical. Union Pacific operates in 23 states and employs over 30,000 individuals. In 2012, Union Pacific reported that the company aimed to hire fifteen thousand employees in a five-year period.[17] Presumably, thousands of individuals apply to work at Union Pacific every year.  In 2021, it was estimated that 2.5 million adults in the U.S. suffer from Opioid Use Disorder.[18] Of those individuals, about 22% (550,000) receive medication assisted treatment. Thus, by conservative estimates Class Members number in the hundreds. Class Members are readily identifiable from records in Union Pacific's possession.

---

[17] *Jobs at Union Pacific: Railroad Seeks to Recruit, Retain 15,000 Workers in the Next Five Years*, June 2012, PROGRESSIVE RAILROADING, https://www.progressiverailroading.com/class_is/article/Jobs-at-Union-Pacific-Railroad-seeks-to-recruit-retain-15000-workers-in-the-next-five-years--31253#:~:text=News:%20Rail%20Industry-,Jobs%20at%20Union%20Pacific:%20Railroad%20seeks%20to%20recruit%2C%20retain%2015%2C000,hire%20about%2015%2C000%20in%20total.

[18] *Only 1 in 5 U.S. Adults with Opioid Use Disorder Received Medications to Treat It in 2021*, *supra* note 7.

69.    Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff and Class Members were aggrieved by the same wrongful conduct of Union Pacific: Union Pacific discriminated against Plaintiff and Class Members because of the medication they took to manage their qualifying disability, OUD.

70.    Plaintiff will fairly and adequately protect and represent the interests of the Class. The interests of Plaintiff are coincident with, and not antagonistic to, those of the other members of the Class.

71.    Plaintiff is represented by counsel with experience in the prosecution of class actions and the prosecution of employment discrimination claims under the ADA.

72.    Questions of law and fact common to members of the Class predominate over questions that may affect only individual Class Members because Union Pacific has acted on grounds generally applicable to the entire Class, thereby making damages with respect to the Class as a whole appropriate. Such generally applicable conduct is inherent in Union Pacific's wrongful actions.

73.    Questions of law and fact common to the Class include:

a.    Whether Union Pacific has a policy or practice of rejecting applicants for employment who use buprenorphine, methadone, or naltrexone to treat their Opioid Use Disorder.

b.    Whether Union Pacific has rejected applicants for employment solely because of their use of such medication to treat their OUD.

c.    Whether Union Pacific acted intentionally and with malice or reckless indifference by rejecting applicants

for employment who use such medication to treat their OUD.

d. Whether individuals who were rejected from employment by Union Pacific based on their use of such medication to treat their OUD are entitled to damages and, if so, in what amount.

e. Whether Union Pacific should be enjoined from rejecting applicants solely because they use such medication to treat their OUD.

74. Class-action treatment is a superior method for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of this class action.

75. Plaintiff and Class Members know of no special difficulty to be encountered in the maintenance of this action that would preclude class certification.

## VIII.  CLAIMS FOR RELIEF

### Claim 1: Disability Discrimination
### in Violation of 42 U.S.C. § 12112(a) and 12112(b)(6)

76.    Mr. Sutherland incorporates all other paragraphs by reference.

77.    Since at least November and continuing to the present, Union Pacific has engaged in unlawful employment practices in violation of Section 102 of Title I of the ADA, 42 U.S.C. § 12112(a) and (b)(6).

78.    Plaintiff and Class Members were qualified individuals with a disability  or were regarded by Union Pacific to have such an impairment, under Section 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8),.

   a. Plaintiff and Class Members individually applied to work as employees of the Train Crew for Union Pacific.

   b. Plaintiff and Class Members have Opioid Use Disorder, a qualifying disability under the ADA.

   c. Union Pacific regarded Plaintiff and Class Members as having OUD.

   d. Plaintiff's and Class Members' OUD substantially limited one or more major life activities.

   e. Plaintiff and Class Members were prescribed, and took, buprenorphine, methadone, or naltrexone to treat their OUD.

   f. Plaintiff and Class Members had the requisite skill, experience, education, and other job-related requirements of the Train Crew employee position.

   g. Plaintiff and Class Members could perform the essential functions of the Train Crew employee position with or without reasonable accommodations.

79.    Union Pacific refused to hire Plaintiff and Class Members in safety sensitive  positions  because  they  were  taking  buprenorphine,  methadone,  or

naltrexone to treat their OUD, without individualized assessments of whether the medication affected their ability to perform the essential functions of the position.

80.   Union Pacific disqualified Plaintiff and Class Members and refused to hire them because they received medication treatment for OUD.

81.   Union Pacific discriminated against Plaintiff and Class Members by subjecting them to adverse employment actions because of an actual or perceived disability.

82.   Union Pacific refused to hire Plaintiff and Class Members because of an actual or perceived disability, OUD, and because they were regarded as disabled, in violation of Sections 102(a) and 102(b)(1) of the ADA, 42 U.S.C. § 12112(a) & 12112(b)(6).

83.   The effect of the unlawful employment practices complained of above has been to deprive Plaintiff and Class Members of equal employment opportunities or otherwise adversely affect their status as employees because of disabilities.

84.   The unlawful employment practices complained of above were and are intentional.

85.   The unlawful employment practices complained of above were and are done with malice or with reckless indifference to the federally protected rights of Plaintiff and Class Members.

### Claim Two: Unlawful Qualification Standard
### in Violation of 42 U.S.C. §§ 12112(a) & 12112(b)(6)

86.    Plaintiff incorporates all other paragraphs by reference.

87.    Since at least November 23, 2024, Union Pacific has maintained and applied a qualification standard that barred Plaintiff and Class Members from working because they were taking buprenorphine, methadone, or naltrexone prescribed to treat their Opioid Use Disorder, regardless of whether the medication had any effect on their ability to perform the essential functions of the job for which they applied.

88.    Union Pacific's policy barring employees in safety related jobs from use of buprenorphine, methadone, or naltrexone screened out Plaintiff and Class Members on the basis of their disability or perceived disability, without an individualized assessment of whether they could safely perform the jobs for which they applied.

89.    The restricted prescription medications policy tends to screen out other qualified individuals with disabilities from employment on the basis of their OUD.

90.    Requiring employees in safety related jobs not to use buprenorphine, methadone, or naltrexone is an illegal qualification standard in violation of 42 U.S.C. § 12116(b)(6).

91.    The effect of the unlawful employment practices complained of above has been to deprive Plaintiff and Class Members of equal employment opportunities or otherwise adversely affect their status as employees because of disabilities.

92. The unlawful employment practices complained of above were, and are, intentional.

93. The unlawful employment practices complained of above were, and are, done with malice or with reckless indifference to Plaintiff and Class Members' federally protected rights.

## IX. RELIEF SOUGHT

94. On behalf of himself and Class Members, Plaintiff Sutherland respectfully requests that this Court enter an Order:

  a. Certifying this case as a class action under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3), on behalf of the Class defined above, appointing Plaintiff Donald Sutherland, as the representative of the Class, and appointing his Counsel as Class Counsel.

  b. Declaring that Union Pacific's actions, as set out above, violate 42 U.S.C. § 12112(a) and (b)(6).

  c. Enjoining Union Pacific, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from engaging in any employment practice which discriminates on the basis of disability, and enjoining Union Pacific from engaging in unlawful medical inquiries.

  d. Declaring that Union Pacific must institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals with disabilities, and which eradicate the effects of its past and present unlawful employment practices.

  e. Awarding Plaintiff and Class Members appropriate back pay with prejudgment interest, in amounts to be proved at trial and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including offers of employment for Plaintiff and Class Members;

f. Awarding Plaintiff and Class Members compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of above, in amounts to be determined at trial.

g. Awarding Plaintiff and Class Members compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain, suffering, humiliation, inconvenience, and mental anguish, in amounts to be determined at trial.

h. Awarding Plaintiff and Class Members punitive damages for the malicious or reckless conduct complained of above, in amounts to be determined at trial.

i. Awarding Plaintiff and Class Members their reasonable attorneys' fees and costs and other litigation expenses.

j. Awarding Plaintiff and Class Members such further relief as the Court deems necessary and proper in the public interest.

## JURY DEMAND

95. Plaintiff and Class Members demand a trial by jury.

Respectfully submitted this 24th day of July 2026.

By: /s Christine Donahoe
Christine A. Donahoe, SBN 1092282
cdonahoe@hq-law.com
Summer H. Murshid, SBN 1075404
smurshid@hq-law.com
Martha L. Burke, SBN 1121510
mburke@hq-law.com
Connor J. Clegg, SBN 1118534
cclegg@hq-law.com

**HAWKS QUINDEL, SC**
5150 N. Port Washington Rd.
Ste 243
Milwaukee, WI 53217
Tel: (414) 271-4453

Fax: (414) 207-6079

*Attorneys for Plaintiff and*
*Proposed Class Members*